UNITED STATES BANKRUPTCY COURT                         FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                               :
                                                     :
                                                     :   Chapter 11
        DREIER LLP,                                  :   Case No. 08-15051 (SMB)
                                                     :
                            Debtor.                  :
------------------------------------------------------------X
In re:                                               :
                                                     :
PAUL GARDI AND ALEX INTERACTIVE                      :
MEDIA, LLC,                                          :
                                                     :
                                                     :
                            Plaintiffs,              :
                                                     :
        -- against --                                :   Adv. Pro. No. 10-3642 (SMB)
                                                     :
JANA PARTNERS LLC and SHEILA M.                      :
GOWAN, Chapter 11 Trustee of the Estate of           :
DREIER LLP,                                          :
                                                     :
                            Defendants.              :
                                                     :
------------------------------------------------------------X

# MEMORANDUM DECISION AND ORDER
# GRANTING MOTION FOR SUMMARY JUDGMENT

ALSTON & BIRD LLP
Attorneys for Plaintiffs
90 Park Avenue
New York, New York 10016

       Craig Carpenito, Esq.
       Alexander S. Lorenzo, Esq.
           Of Counsel

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309

       John E. Stephenson, Jr., Esq.
           Of Counsel

SCHULTE ROTH & ZABEL LLP
Attorneys for Defendant JANA Partners LLC
919 Third Avenue
New York, NY 10022

    Michael E. Swartz, Esq.
    Nicole Z. Davidson, Esq.
        Of Counsel

DIAMOND MCCARTHY LLP
Attorneys for Defendant Sheila M. Gowan,
  Chapter 11 Trustee of the Estate
620 Eighth Avenue, 39th Floor
New York, New York 10018

    Howard D. Ressler, Esq.
    Stephen T. Loden, Esq.
    Amos Elberg, Esq.
        Of Counsel.

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       This case presents the question whether a client is bound when his attorney forges the client's signature to a settlement he never authorized. The plaintiffs, Paul Gardi and Alix Interactive Media, Inc. ("AIM", and together with Gardi, the "Gardi Parties" or the "plaintiffs"), the victims of the forgery perpetrated by their attorney Marc Dreier, seek declaratory and other relief regarding the validity of such a settlement entered into with the defendant JANA Partners LLC ("JANA"). JANA, which was admittedly ignorant of Dreier's fraud and paid over $6.3 million under the settlement agreement (which Dreier stole), has moved to dismiss the Amended Complaint, dated Sept. 28, 2010 (ECF Doc. # 4).[1] The Court converted the motion to one for summary judgment, and now grants the motion for the reasons that follow.

---

[1] Unless otherwise indicated, citations to the ECF refer to the docket in this adversary proceeding.

2

**BACKGROUND**

Except as noted otherwise, the material facts alleged in the Amended Complaint are undisputed.[2] Gardi is an investor specializing in identifying undervalued technology investments and the managing member of AIM. JANA is a hedge fund based in New York City. The other defendant, Sheila M. Gowan, is the chapter 11 trustee of the Dreier LLP estate.

In 2007, the plaintiffs and JANA entered into a written investment agreement regarding the pursuit of a particular investment opportunity. The agreement provided that the plaintiffs would be entitled to compensation based on the profit that JANA earned from the investment (the "Profit Participation"). The investment produced a profit, and JANA notified the plaintiffs of its calculation of the Profit Participation. The plaintiffs disputed the calculation on multiple grounds.

The plaintiffs were initially represented in the matter by Stuart G. Stein, Esq. of the law firm of Hogan & Hartson LLP. On July 9, 2008, Stein informed JANA by letter (the "*Stein Letter*") that Marc Dreier had been retained by the Gardi Parties and "[a]ny further communications to Gardi from [JANA's counsel should] be furnished to Gardi's counsel at the address indicated below."[3] Gardi was "carbon copied" on the letter.

In early October 2008, Dreier informed the plaintiffs that JANA had agreed to pay $6,349,093 to settle the matter. Although the amount was acceptable, certain non-economic

---

[2] The Gardi Parties filed a virtually identical complaint against JANA and the chapter 7 trustee of the Estate of Marc S. Dreier. (*See* ECF Doc. # 1, Adv. Proc. No. 10-3641.) The parties to that adversary proceeding entered into a stipulation staying the litigation and agreeing to be bound by the determination of JANA's motion in this adversary proceeding. (*See Stipulation and Order*, dated Nov. 18, 2010 (ECF Doc. # 14, Adv. Proc. No. 10-3641).)

[3] The *Stein Letter* is attached to the *Letter to the Court from Michael Swartz*, dated Apr. 15, 2011 ("*Swartz Letter*") (ECF Doc. # 26).

3

terms remained in dispute. In particular, JANA sought a unilateral non-disparagement clause for its benefit while the plaintiffs insisted that the clause be mutual. Thus, when Dreier sent a draft settlement agreement to Gardi containing a unilateral non-disparagement clause on October 13, 2008, he refused to sign it.

### A.    Dreier's Fraud

Presumably eying the $6.3 million settlement as a funding source for his Ponzi scheme, Dreier resorted to subterfuge. Later that same day—October 13, 2008—Dreier sent Gardi a revised settlement agreement that contained a mutual non-disparagement clause (the "Gardi Version").[4] Dreier told Gardi that this was the final version, and any attempt to negotiate further might cause the deal to blow up. Dreier advised Gardi to email the signed agreement and deliver the original signatures to his office. Believing that JANA had agreed to the Gardi Version, Gardi signed the agreement both in his individual capacity and on AIM's behalf and faxed it to Dreier, also on the same day. In truth, JANA never agreed to the Gardi Version.

The next day, Dreier emailed JANA a different version of the settlement agreement (the "JANA Version"). This one contained the unilateral non-disparagement clause demanded by JANA.[5] The JANA Version purported to bear Gardi's signature, but in fact, Dreier had forged

---

[4]    The Gardi Version is attached as Exhibit B to the Stipulation, dated Nov. 8, 2010 (the "Nov. 8 Stipulation"), which is attached as Exhibit C to the *Affirmation of Michael E. Swartz*, filed Nov. 16, 2010 (ECF Doc. # 12). The non-disparagement clause (¶ 6) in the Gardi Version stated:

> The Gardi Parties agree that they will not make, and shall not cause to be made, any false, defamatory or disparaging statements about JANA and/or any of JANA's partners, members, officers or employees, and JANA agrees not to make or cause to be made any false, defamatory or disparaging statements about either of the GARDI Parties.

[5]    The JANA Version is attached as Exhibit A to the Nov. 8 Stipulation. The non-disparagement clause (¶ 6) in the JANA Version stated:

> The Gardi Parties agree that they shall not make, and shall nor cause to be made, any false, defamatory or disparaging statements about JANA and/or any of JANA's partners, members, officers or employees.

4

Gardi's name.  Dreier's email nevertheless represented to JANA that the plaintiffs had signed it.  The email also instructed JANA to wire the settlement amount to a "Dreier LLP-Attorney Trust Account F/B/O Gardi" (the "5966 Account") maintained at JP Morgan Chase.  Believing that the Gardi Parties had agreed to the JANA Version, JANA signed the JANA Version, and per Dreier's email, wired the settlement amount into the 5966 Account.

The 5966 Account was the one in which Dreier commingled the proceeds of his Ponzi scheme with Dreier LLP client funds.  *In re Dreier LLP*, 429 B.R. 112, 118 (Bankr. S.D.N.Y. 2010) ("*Dreier*"), *aff'd*, No. 10 Civ. 4758 (DAB), 2010 WL 3835179 (S.D.N.Y. Sept. 10, 2010).  Dreier never paid the settlement proceeds to the Gardi Parties; instead, he converted the funds.  *Id.*  The Gardi Parties did not learn that JANA had wired the money into the 5966 Account until after Dreier's arrest was made public in December 2008.

**B.    This Motion**

Following unsuccessful efforts to impose a constructive trust on the settlement proceeds in the hands of a subsequent transferee, *Dreier*, 429 B.R. at 135–38, the Gardi Parties commenced this adversary proceeding.  In substance, they contend that the settlement with JANA is unenforceable and should be rescinded.  As a result, their claims against JANA remain viable, and JANA must bear the $6,349,093 loss caused by Dreier's fraud and theft.

JANA moved to dismiss the Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6), relying on the settlement and releases exchanged by the parties.  It was apparent that the parties did not dispute the events described above or that each was an innocent and unknowing victim of Dreier's dishonesty.  Accordingly, and with the parties' consent, I converted JANA's motion to dismiss to a one for summary judgment.  *See* FED. R. CIV. P. 12(d).

5

The plaintiffs' counsel conceded at oral argument that based on the existing record, Dreier had the apparent authority to enter into a settlement binding on the Gardi Parties. (Transcript of Hearing, held February 24, 2011 ("Tr."), 69:10–70:18 (ECF Doc. # 1017, Case No. 08-15051).) The plaintiffs said they needed discovery regarding "internal communications at JANA" or communications between Dreier and JANA's counsel that would undercut the reasonableness of JANA's reliance on Dreier's authority. (Tr. 62:17–25, 70:19–20.)

In addition, the plaintiffs' counsel argued that even if Dreier had the apparent authority to settle the dispute with JANA, Dreier did not have the apparent authority to give the wire transfer instructions. (Tr. 71:5–6.) The JANA Version, (¶ 1), stated that "[p]ayment shall be made by wire transfer within two business days following the full execution of this Agreement to an account in the United States of America *designated in writing by the Gardi Parties.*" (Emphasis added.) The plaintiffs argued that they, not Dreier, had to give the wire transfer instructions, and the express limitation in the JANA Version prevented JANA from reasonably relying on Dreier's email instructions.[6]

I granted the plaintiffs' request to conduct some brief discovery, and allowed each party to submit additional materials bearing on the summary judgment motion. Following the close of discovery, both parties submitted letters to the Court. The Gardi Parties did not produce any additional evidence. They nevertheless argued, notwithstanding the earlier concession by their counsel, that JANA had failed to establish that Dreier had apparent authority to bind the plaintiffs to the settlement or direct payment of the settlement amount. (*Letter to the Court from John E. Stephenson*, dated Apr. 15, 2011 (ECF Doc. # 25).) JANA, *inter alia*, continued to press

---

[6] The corresponding provision of the Gardi Version, (¶ 1), stated only that "[p]ayment shall be made by wire transfer within seven days following the full execution of this Agreement."

6

its primary argument that Dreier had apparent authority to settle the case and receive the proceeds, (*Swartz Letter*), and attached the *Stein Letter*.

## DISCUSSION

A.  **Standards Governing Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by FED. R. BANKR. P. 7056, governs summary judgment motions. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).[7] The moving party bears the initial burden of showing that the undisputed facts entitle him to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). If the movant carries this initial burden, the nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In deciding whether material factual issues exist, all ambiguities must be resolved and all inferences must be drawn in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587.

B.  **Dreier's Authority**

Both sides have argued the legal effect of Dreier's forgery in terms of whether he had the apparent authority to settle the plaintiffs' dispute with JANA. This approach finds support in *Nash v. Y & T Distribs.*, 616 N.Y.S.2d 402 (N.Y. App. Div. 1994), a factually similar case

---

[7] JANA's motion is governed by the amendments to Rule 56 that became effective on December 1, 2010. Although some language has changed, the standard for granting summary judgment remains unchanged and the amendments will not "affect continuing development of the decisional law construing and applying these phrases." FED. R. CIV. P. 56 advisory committee's note (2010).

7

involving an attorney's forgery of his client's signature on a release and settlement check. After first noting that the fraud between a party and his agent is not sufficient to invalidate a settlement, *id.*, 616 N.Y.S. at 403; *accord Lodhi v. Stewart's Shops Corp.*, 861 N.Y.S.2d 160, 162 (N.Y. App. Div. 2008) ("To invalidate a contract . . . the alleged fraud must be between the parties to the contract or release, not between a party and his or her agent."), the court concluded, without citation to authority, that "the inquiry must turn on whether the plaintiff's attorney had the authority to enter into the settlement." *Nash*, 616 N.Y.S. 2d at 403; *accord Blakney v. Leathers*, 867 N.Y.S.2d 145, 146 (N.Y. App. Div. 2008) (client not bound by release to which his attorney forged the client's signature where the attorney lacked authority to settle the action) (citing *Nash*); *cf. Edinburg Volunteer Fire Co. v. Danko Emergency Equip. Co.*, 867 N.Y.S.2d 547, 549 (N.Y. App. Div. 2008) (principal not bound by contract to which agent forged principal's signature where agent lacked authority to enter into contract on principal's behalf). The plaintiffs' attorney conceded at oral argument that the existing record supported the conclusion that Dreier had the apparent authority to settle, and the plaintiffs did not supplement the record following the close of discovery. Although they apparently retreated from this concession in their lawyer's post-discovery letter to the Court, they did not explain the reason for the change.

While their concession disposes of the question of Dreier's apparent authority, Dreier's apparent authority to settle should be irrelevant. Dreier did not purport to bind the Gardi Parties by signing his own name (Dreier) to the JANA Version, *e.g., Pereira v. Sonia Holdings, Ltd. (In re Artha Mgmt., Inc.)*, 91 F.3d 326 (2d Cir. 1996) (lawyer had apparent authority to bind client by signing lawyer's own name to settlement), or assenting to the terms of the settlement *qua* Dreier in his client's absence. *E.g., Fennell v. TLB Kent Co.,* 865 F.2d 498 (2d Cir. 1989)

8

(attorney who advised court of settlement during conference call lacked apparent authority to settle); *Hallock v. State,* 474 N.E.2d 1178 (N.Y. 1984) (attorney had apparent authority to settle litigation on the record in open court without client's knowledge or consent).

Instead, Gardi appeared to agree to the settlement in his own name based on his forged signature without regard to Dreier's apparent authority to settle. Dreier duped both parties, and the well-settled rule of agency law dictates that as between two innocent parties, "the risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent." *Kirschner v. KPMG, LLP*, 938 N.E.2d 941, 951 (N.Y. 2010) (quoting *Andre Romanelli, Inc. v. Citibank, N.A.*, 875 N.Y.S.2d 14, 16 (N.Y. App. Div. 2009)). This precise rule was applied by two state supreme courts in factually similar situations involving an attorney's forgery of his client's signature to unauthorized settlement documents. In the first case, *Cohen v. Goldman*, 132 A.2d 414 (R.I. 1957), the attorney settled a lawsuit without his client's knowledge or consent, and forged the client's signature on a release and the settlement check. *Id.* at 415. The trial court vacated the settlement because of the forgery, *id.* at 416, but the Supreme Court reversed.

The Court initially ruled that the attorney lacked authority to settle the case, *id.,* but then observed the matter did not involve a dispute between the client and his attorney. Instead, the case presented a situation involving two innocent parties whose rights were violated by the client's attorney. In such a situation, the person that hired the attorney must bear the loss:

> It seems to us that petitioner's conduct, innocent though it may have been, placed his attorney in such a situation that a person of ordinary prudence and discretion would have been justified in assuming, as respondent did in the case at bar, that the attorney was authorized to perform, in behalf of his client, the particular act in question, namely, the compromise of the case and the filing of the settlement stipulation. It is the conduct of the client and not that of the attorney which must be considered in determining whether apparent authority exists, and if

9

> it does, the client is bound by what the attorney does. *Ferro Concrete Construction Co. v. United States*, 1 Cir., 112 F.2d 488. This being so, we believe that in a case such as this where two innocent parties are involved, justice requires that of the two the least culpable should not be made to suffer. Where either party to a transaction made with an agent is to suffer by his neglect, it should be his principal. *Nicoll v. American Insurance Co.*, 3 Woodb. & M. 529, Fed.Cas. No. 10,259.

*Id.* at 417; *but see Ball v. Teisonniere*, No. CV980416390, 2000 WL 1868243, at *3–4 (Conn. Super. Ct. Dec. 1, 2000) (rejecting *Cohen v. Goldman* and concluding that the balance is "more fairly struck" by permitting the plaintiffs to pursue their claim) (unpublished opinion).

The Supreme Court of Pennsylvania reached the same result on similar facts in *Rothman v. Fillette*, 469 A.2d 543 (Pa. 1983). There, Rothman hired Madnick as his attorney to represent him in a personal injury action against Fillette. Without Rothman's knowledge or consent, Madnick settled the lawsuit and forged Rothman's name to the release and the settlement check, and converted the proceeds. The lawsuit was marked settled, but after discovering the unauthorized settlement, Rothman sought to reinstate the lawsuit against Fillette. The lower court reinstated the lawsuit and Fillette appealed. *Id.* at 544–45.

The Pennsylvania Supreme Court reversed. After first observing that Madnick lacked authority to settle the lawsuit, *id.* at 545, the court identified the issue as who should bear the loss resulting from an agent's unfaithful performance where both sides were innocent. Citing the "long recognized principle that where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss," *id.,* the court ruled

> Our case law has expressed that a principal acting through an agent in dealing with an innocent third party must bear the consequences of the agent's fraud. *In such instances the lack of authority of the agent has been rejected as a basis for shifting the principal's losses onto the innocent third party*. The fact that the agent has wronged his principal through the agent's unlawful act does not provide a predicate for insulating the principal against the harm caused by the agent at the expense of the innocent third party who had no responsibility for the

10

> conduct of the agent. We believe that this view is consistent with fundamentally sound principals of agency and equity and that there were no other additional factors here present to justify ignoring its applicability.

*Id.* at 545–46 (citations omitted) (emphasis added); *accord Hynko v. Hilton*, 401 S.E.2d 324, 326 (Ga. App. 1991).

Here, the Gardi Parties must bear the loss. The Gardi Parties retained Dreier and authorized him to negotiate a resolution with JANA. Dreier served as the conduit for all of the communications between his clients and JANA; there is no evidence that Gardi dealt directly with JANA. JANA was justified in believing that the JANA Version that Dreier sent contained Gardi's signature. As a result of Dreier's fraud, JANA paid over $6.3 million, and should not be compelled to pay a second time. As between the Gardi Parties and JANA, the injury caused by Dreier's fraud must be allocated to the Gardi Parties, Dreier's principals.

If this seems harsh to the Gardi Parties, the sting is lessened somewhat by the recourse they have but JANA lacks. The plaintiffs have been slow to repudiate the JANA settlement and have asserted rights as the injured victims of Dreier's fraud.[8] Gardi is a beneficiary of the restitution that the District Court ordered Dreier to pay as part of his conviction. *Dreier*, 429 B.R. at 122. The Gardi Parties have also filed claims in the *Marc S. Dreier* and *Dreier LLP* cases, and the bar dates in both cases have passed. Thus, the Gardi Parties may be able to recoup some of their losses.

---

[8] The Gardi Parties knew about Dreier's fraud no later than December 2008, but did not sue JANA to vacate the settlement until they commenced the adversary proceedings in this Court on September 22, 2010.

11

**C.     Dreier's Authority to Direct the Settlement Payment**

Lastly, the plaintiffs argue that even if Dreier had authority to settle the dispute and bind them, he did not have the authority to direct the payment of the settlement funds, and JANA lacked a reasonable basis to rely on his direction. The plaintiffs' argument is based on the provision in the JANA Version that "[p]ayment shall be made by wire transfer within two business days following the full execution of this Agreement to an account in the United States of America *designated in writing by the Gardi Parties*" (emphasis added). The plaintiffs contend that JANA knew or should have known that the payment instructions had to come directly from the Gardi Parties and not from Dreier.

As a rule, "payment to an attorney of a claim which he is employed to recover or collect operates as payment to the client himself, absent specific contrary arrangements." *Brownstein v. Aluminum Reserve Corp.*, 245 F.2d 82, 84 (2d Cir. 1957); *accord Chestnut Shipping Co. v. T-3 Freight, Ltd.*, No. 94 Civ. 1952 (PKL), 1995 WL 75485, at *2 (S.D.N.Y. Feb 22, 1995); *Hutzler v. Hertz Corp.*, 347 N.E.2d 627, 630 (N.Y. 1976); *McCoy v. Barclay*, 295 N.Y.S. 130, 133 (N.Y. App. Div. 1937). "If the attorney absconds with the cash without paying it over to his client, the client may not thereafter compel the debtor or tort-feasor to pay a second time." *Hutzler,* 347 N.E.2d at 630. Dreier was retained by the Gardi Parties to collect their claim, and payment to Dreier constituted payment to the Gardi Parties under the general rule. The question presented by the plaintiffs' argument is whether the quoted portion of the JANA Version was a "specific contrary arrangement" that required the Gardi Parties rather than Dreier to give the payment instructions.

When asked to interpret contractual language on a motion for summary judgment, the question is "whether the contract is unambiguous with respect to the question disputed by the

parties." *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010). This presents a question of law. *Maverick Tube*, 595 F.3d at 465. A contract is ambiguous if it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Int'l Multifoods*, 309 F.3d at 83 (internal quotation marks omitted); *Cont'l Ins. Co.*, 603 F.3d at 180; *Maverick Tube*, 595 F.3d at 466. "[E]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." *Maverick Tube*, 595 F.3d at 466 (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)).

"Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation," *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989), unless each is a "reasonable" interpretation. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992); *accord Maverick Tube*, 595 F.3d 458, 467 (2d Cir. 2010); *see Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) ("no ambiguity exists where the alternative construction would be unreasonable"). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 171 (N.Y. 1992); *accord Maverick Tube*, 595 F.3d at 467.

Furthermore, "[t]here is no 'rigid rule' prohibiting a trial court from interpreting an ambiguous contract on summary judgment." *Renfrew v. Hartford Acc. and Indem. Co.*, 406 Fed.Appx. 227, 228 (9th Cir. 2010). "A court may . . . grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000); *see also Renfrew*, 406 Fed.Appx. at 228 (summary judgment appropriate if there is no genuine issue of material fact presented through extrinsic evidence); *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008) ("To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case.").

The payment direction language in the JANA Version is not ambiguous, and admits of only one reasonable interpretation. JANA did not know where to wire the settlement funds unless the Gardi Parties told it. The obvious purpose of the payment clause was to fill that gap, and the plaintiffs have not pointed to any evidence that it meant something different. JANA dealt exclusively with Dreier, and did not negotiate directly with the Gardi Parties once Dreier entered the scene; any information from the Gardi Parties passed through Dreier and the payment instructions were no exception.[9] They cannot be read as JANA's sudden insistence that it must deal directly with the Gardi Parties on this one point to the exclusion of Dreier. Moreover, when the consummation of the settlement called on the Gardi Parties rather than Dreier to do something,

---

[9] The Gardi Version did not include a payment instruction clause, and Gardi presumably sent his payment instructions to Dreier to transmit to JANA.

14

as in the execution of the releases, the JANA Version made that distinction expressly.[10] Consequently, JANA acted reasonably in relying on the payment instructions delivered by Dreier ostensibly on behalf of the Gardi Parties.

Accordingly, JANA's motion for summary judgment is granted. The Court has considered the plaintiffs' remaining arguments, and concludes that they lack merit. The parties are directed to settle appropriate orders in each adversary proceeding.

So ordered.

Dated: New York, New York
May 23, 2011

>                         /s/ *Stuart M. Bernstein*
>                        STUART M. BERNSTEIN
>                     United States Bankruptcy Judge

---

[10] The JANA Version stated that "Gardi will deliver an executed release for JANA in the form of Exhibit A," (¶ 4), and "AIM will deliver an executed release of JANA in the form of Exhibit B." (¶ 5.)